UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-02259-WYD

JEFFREY P. GARVER,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

      Defendant.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

      THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's claim for disability insurance benefits ["DIB"] and supplemental security

income ["SSI"] payments.  For the reasons stated below, this case is reversed and

remanded for further fact finding.  Plaintiff's Motion to Remand for Consideration of New

and Material Evidence Pursuant to 42 U.S.C. §405(g) is denied as moot as Plaintiff

acknowledges that the arguments made in that motion are incorporated into his

Opening Brief, and I am remanding based on those and other arguments.

II.    <u>BACKGROUND</u>

      Plaintiff, born on January 14, 1969, was 34 years old on his alleged onset date,

December 1, 2003, and was 40 years old on the date of the ALJ's decision.  (Transcript

["Tr."] 40, 114.)  Thus, he is a younger individual within the meaning of the Social

Security Act.  Plaintiff has at least a high school education, and previously worked as a cashier, coffee shop barista, telemarketer, and psychiatric aide.  (*Id*. 152, 56-58.)  He has a history of substance abuse.  (*Id*. 336-37, 423-44.)

On February 26, 2007, Plaintiff filed applications for DIB under Title II of the Social Security Act (the Act) and SSI under Title XVI of the Act.  (Tr. 114-121.)  Plaintiff alleged that he became disabled on December 1, 2003, due to bipolar disorder, anxiety, brain injury, hypoglycemia, and left eye blindness.  (*Id*. 17, 142, 147.)  Plaintiff's claim was denied at the initial determination stage.  (*Id*. 17, 79-80, 86-88.)

An administrative law judge ["ALJ"] held a hearing on January 22, 2009 (Tr. 35-78), and issued a decision on March 23, 2009.  (*Id*. 14-34.)  The ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2006, and that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of December 1, 2003.  (*Id*. 19, Finding 2.)

At step two, the ALJ determined that Plaintiff had "severe" impairments of: history of traumatic brain injury; left lower neuropathy; aphakic (lacking the lens of the eye) left eye with history of retinal detachment; bipolar mood disorder; and cognitive disorder.  (Tr. 19-21, Finding 3.)  Also, from December 1, 2003 through the end of February 2007, the ALJ found that Plaintiff had a severe impairment of polysubstance dependence (cocaine and alcohol abuse).  (*Id*. 19.)  Beginning on March 1, 2007, Plaintiff's polysubstance abuse was no longer a severe impairment.  The ALJ stated from that date on, the substance abuse "is not a primary issue and is therefore, not 'material' to a finding of disability for this relevant time period."  (*Id*. 21.)

-2-

At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or equal the criteria of the Listings.  (Tr. 21-22.)  From December 1, 2003 through February 2007, when considering Plaintiff's polysubstance abuse, the ALJ found that Plaintiff had a marked restriction in activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in concentration, persistence, and pace, and one episode of decompensation.  (*Id.* 22.)  Beginning in March 2007, the same difficulties existed with one exception–Plaintiff had a moderate, not a marked, restriction in activities of daily living.  (*Id.*)  After consideration of Plaintiff's symptoms and alleged limitations, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent" they were inconsistent with the ALJ's determination as to Plaintiff's residual functional capacity ["RFC"].  (*Id.* 23-24.)

As to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform a limited range of light or sedentary work with additional nonexertional limitations.  (Tr. 23, Finding 5.)  Specifically, the ALJ determined that Plaintiff could:

> lift and carry 20 pounds occasionally and 10 pounds frequently; sit 2 hours per occasion and 8 hours in an 8-hour day, with the proviso that he can briefly stand and stretch in the work area every 30 minutes; stand 20 minutes per occasion and 2 hours in an 8-hour day; walk 20 minutes per occasion, two hours total in an eight-hour day.  The claimant should not operate foot controls with the left lower extremity, needs a cane when walking or standing more than briefly, and cannot push off using the lower left extremity.  He should not climb stairs/ladders/scaffolds, crouch or crawl; but can occasionally walk ramps, balance, stoop and kneel. . . . Since the claimant

has no vision of the left eye, such that binocular and peripheral vision is limited, occupations where he would be a danger to others should be precluded. Mentally, the claimant can understand, remember, and carry out instructions that could be learned within a period of up to approximately 90 days which would involve only occasional interaction with co-workers, supervisors, and the general public.

(*Id.*)

At step four, the ALJ found that Plaintiff's RFC precluded him from performing his past work. At step five, however, based on the testimony of a vocational expert ["VE"], the ALJ found that work exists in significant numbers in the national economy that Plaintiff could perform. (Tr. 23, 32, Findings 5 and 10.) The ALJ thus found that Plaintiff was not disabled under the Act from December 1, 2003 through the date of the decision. (*Id.* 17; 34, Finding 11.)

The Appeals Council declined review on July 31, 2009. (Tr. 3-7.) Plaintiff submitted additional evidence to the Appeals Council. On August 25, 2009, the Appeals Council denied Plaintiff's request to reopen the case and change the decision, finding that the evidence would not change the ALJ's decision and that the time limit to submit such evidence had expired. (Tr. 1-2.) This appeal followed.

Plaintiff claims that the Commissioner's decision should be reversed and he should be awarded benefits because of various errors of law and because the decision is not supported by substantial evidence. The alleged errors include the ALJ's failure to give the treating physician's opinion controlling weight and to afford it no weight, the failure to consider all of the vocational evidence, the testimony of the VE and the ALJ's decision contradicted definitions and terms in the Dictionary of Occupational Titles

["DOT"] without adequate explanation, the failure to properly develop the record, and the failure to include all of Plaintiff's limitations in the hypothetical question.

Plaintiff argues at step five that the ALJ erred in finding that he could do a semi-skilled occupation when there was no evidence that he had transferable skills. Further, he asserts there was not substantial evidence to support a finding that there was a significant number of other jobs that he could perform. Finally, Plaintiff argues that the decision should be remanded for a new hearing based upon new and material evidence not available to the ALJ at the time of the hearing.

The Commissioner maintains in response that substantial evidence supports the ALJ's determination that Plaintiff could perform work and was not disabled. He asserts in that regard that the ALJ properly determined that Plaintiff retained the RFC to perform a limited range of light work. Further, he asserts that the ALJ properly determined other work existed in the national economy that Plaintiff could perform after March 2007. As to the new evidence for which Plaintiff seeks a remand, it is argued that the Appeals Council made a correct determination that the evidence Plaintiff submits is not "material". Accordingly, the evidence plays no further role in judicial review. Finally, it is argued that Plaintiff has not demonstrated good cause for failing to incorporate the evidence into the record within the applicable time period.

III.    ANALYSIS

    A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

B.      Whether the ALJ's Decision is Supported by Substantial Evidence

1.      Whether the ALJ Failed to Properly Evaluate the Treating Physician's Opinions

I first address Plaintiff's argument that some or all of treating physician Dr. Joseph's opinions should be given controlling weight pursuant to the treating physician rule.  I note that an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'"  *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted).  "A treating physician's opinion must be given

substantial weight unless good cause is shown to disregard it." *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994).  The ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion that a claimant is disabled." *Id.*

In September 2007, Dr. Joseph opined that Plaintiff would likely miss 4 or more days per month at work as a result of his impairments or treatment, that he would likely have "good" and "bad" days, that he would need an unscheduled break every day, that he must use a cane while engaging in occasional standing/walking, and that he must walk around at least 5 minutes at a time after being seated for 90 minutes.  (Tr. 273-76.)  She was of the opinion that Plaintiff could not lift and carry weight, could only handle low stress jobs and could not stoop, crouch/ squat, or climb ladders or stairs. (*Id.*)  Dr. Joseph also opined that Plaintiff's pain and other symptoms were severe enough to frequently interfere with concentration and attention needed to perform even simple work tasks.  (*Id.*)

In a letter dated March 11, 2008, Dr. Joseph stated that due in part to Plaintiff's "history of closed head injury, peripheral neuropathy, and bipolar disorder", he "suffers from severe daily pain and difficulty concentrating for long periods and is thus unable to perform any work."  (Tr. 789.)  She also stated that Plaintiff takes multiple medications, that an EMG/NCV in 2006 "demonstrated abnormalities of multiple nerves, likely stemming from his previous traumatic brain injury", and that Plaintiff's "residual function as scored on the GAF scale is 35."  (*Id.*)  The ALJ found that this letter was "generally consistent with the [RFC] questionnaire that Dr. Joseph completed in September 2007

at which time she essentially opined the claimant had severe functional limitations that would preclude sustained work activity." (*Id.* at 27.)

The ALJ asked for further clarification from Dr. Joseph as to the basis for her opinions regarding Plaintiff's limitations. (Tr. 829.) In her clarification letter of January 9, 2009, Dr. Joseph stated Mr. Garver "suffers from severe daily pain and difficulty concentrating for lengths at a time and therefore is unable to adequately perform any work." (*Id.* 861.) She repeated her finding that Plaintiff had a GAF score of 35. (*Id.*) She also stated that a seizure disorder from a traumatic brain injury has been present for years and that Plaintiff continues to suffer from break through seizures. (*Id.*) Finally, Dr. Joseph explained that while her assessment of limitations was based mainly on Plaintiff's assessment of his own capabilities, she could "state that due to the [listed] medical conditions and resulting chronic and mental disabilities", Plaintiff could not "be employed in any occupation. (*Id.*)

The ALJ did not find Dr. Joseph's "statements/opinions persuasive" and "accord[ed] them little weight." (Tr. 27.) He later stated that he gave no weight to Dr. Joseph's statement in Exhibit 12F (her letter of March 11, 2008, Tr. 789) or her assessment in Exhibit 3F (the Physical RFC Questionnaire completed in September 2007). (*Id.*)

Turning to my analysis, I note that while I may not reweigh the evidence, I must assure myself "that the ALJ gave the relevant material due consideration." *Andersen v. Astrue*, No. 05-4305, 2009 WL 886237, at *5 (April 3, 2009). I first find that the ALJ erred in not determining whether Dr. Joseph's opinions should be given controlling

weight.  Indeed, he never even referenced the rule that a treating physician's opinions are generally entitled to controlling weight.  Instead, he found that the medical evidence does not support the level [of] disability that this physician opines to.  (Tr. at 28.)  That is not the test, however, for determining whether the opinion is entitled to controlling weight.  The ALJ's failure to consider this issue is error which requires remand, particularly given the other errors which I find the ALJ committed.  *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citing SSR 96-2p, 1996 WL 374188, at *2) (quotations omitted)).

Further, the ALJ's statement that he gave "little weight" to some of Dr. Joseph's opinions does not inform the Court which, if any, of her opinions were given weight. *See Andersen*, 2009 WL 886237, at *5 (holding it was unclear from the ALJ's decision to give treating providers' opinions "little weight" whether the ALJ gave the opinions "some minimal consideration or no weight at all").  This is also error.  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see also* SSR 96-2p, 1996 WL 374188, at *5 (1996) (the ALJ's decision must be sufficiently specific to make clear to any subsequent reviewer the weight that was given to a medical opinion).

Even if an ALJ decides that a treating physician's opinions are not entitled to controlling weight, this does not allow him to reject their opinions outright.  *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004).  Instead, the physician's opinions are "'still entitled to deference and must be weighed using all of the [relevant] factors.'"  *Id.* (quotation omitted).[1]  "In many cases, a treating source's medical opinion will be entitled

---

[1]  These factors are set out in 20 C.F.R. § 404.1527(d).

to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4.

The ALJ did not appear to give any deference to Dr. Joseph's opinions, weigh the relevant factors, or consider for the record what lesser weight should be given to her opinions. In other words, the ALJ failed to satisfy this Court that all of the required factors were considered and that the apparent rationale for largely disregarding Dr. Joseph's opinions is sufficient. *See Anderson*, 2009 WL 886237, at *5. Indeed, the ALJ improperly appeared to reject Dr. Joseph's opinion based merely on an examination of the supportability of her findings, without any indication that he considered the other required factors as required. *See id.* The ALJ's failure to apply the correct legal standards or to provide the court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal. *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

Finally, I find that many of the reasons given by the ALJ to discount Dr. Joseph's opinions are not properly supported. The ALJ pointed to the fact that around the time of her September 2007 assessment, "progress notes show no significant objective exam findings." (Tr. 27.) However, the ALJ ignored the fact that Dr. Joseph's RFC opinion itself identified "clinical findings and objective signs" that supported her assessment. These findings include left foot drop, hyper-reflexia on the left, a patella/achilles problem, decreased sensation to the left lower extremity, and the EMG and UMN signs of the left lower extremity. (*Id.* 273, Question 6.) A medical doctor's statements about a claimant's condition or impairments "are specific medical findings" which the ALJ errs in

rejecting in the absence of conflicting evidence.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

Further, the ALJ improperly discounted the nerve conduction studies which provide objective evidence to support Plaintiff's complaints of pain and neuropathy in his lower left extremity.  While that testing revealed no evidence of left peroneal injury, it indicated left tibial nerve distribution and hyperflexia (overactive or overresponsive reflexes) consistent with compression neuropathy.  (Tr. 402-04.)[2]  While the ALJ acknowledged the results of the testing, he cited them to show that Dr. Joseph's opinions were not supported.  (*Id.*)  However, the opposite is true.  They demonstrate objective findings which support her opinions.

As to the actual progress notes relied on by the ALJ, he cited two isolated examples of notes from Dr. Joseph in September 2007–Exhibit 12F at 36 and Exhibit 10F at 5, found in the record at 513 and 813.  (Tr. 26.)  Even these notes, however, include medical findings, observations and assessments by Dr. Joseph that cannot be ignored by the ALJ.  In these exams, Dr. Joseph assessed neuropathy among other impairments, and prescribed Percocet and Neurontin.  (*Id.* 513, 813)[3]  She also noted Plaintiff's vitals and that Plaintiff walks with a cane/limp.  (*Id.*)  Thus, problems with

---

[2]  Dr. Blei opined that the hyperflexia and upper motor neuron (UMN) (a neuron that starts in the motor cortex of the brain and terminates within the medulla or the spinal cord) signs stemmed from Plaintiff's prior head injury.  (*Id.* 404.)

[3]  Percocet, which includes a narcotic, is used to help relieve moderate to severe pain. http://www.webmd.com/drugs/drug-7277-percocet+oral.aspx?drugid=7277&drugname=percocet+oral. Neurontin is used to control seizures and to relieve nerve pain conditions, including neuropathy. http://www.webmd.com/drugs/mono-8217-GABAPENTIN+-+ORAL.aspx?drugid=9845&drugname=Neurontin+Oral.

ambulation and the need for a cane were observable to Dr. Joseph as well as the need for a prescription of pain medication.  The ALJ does not identify what additional findings or examination would have shown at this point, particularly given the findings from the nerve conduction studies in February 2006.  The ALJ's logic in stating that Dr. Joseph's opinion is not well supported by the evidence does not appear to be valid.

The ALJ also cited to page 13 of Exhibit 10F, found in the record at 521.  (Tr. 26.) He states in that examination that while Plaintiff complained of left leg numbness, he denied any acute symptomatic complaints.  (*Id.*)  However, the ALJ ignores other critical findings in that document, including the assessment of "chronic pain in the LLE (now uses cane for ambulation)" and the finding that Neurontin was "minimally effective" to control the pain.  (*Id.* 521.)  It also documents numbness of the left foot and left foot drop and diagnoses "LLE neuropathic pain".  (*Id.*)  The ALJ cannot "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'"  *Carpenter v. Chater*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted).

The ALJ also found that "the medical evidence does not support the level [of] disability" that Dr. Joseph opines to.  (Tr. 28.)  The ALJ pointed to Dr. Joseph's reference in her November 8, 2008 letter to the fact that Plaintiff "suffers from breakthrough seizures every two to three months", which the ALJ found was "*markedly inconsistent with treatment notes that show no reports of seizure activity.*"  (*Id.*) (emphasis in original.)  It is true that Plaintiff was no longer suffering from seizure activity at the time of this opinion of Dr. Joseph; however, Plaintiff had suffered for most

of his life from this condition.[4]  Further, the seizure disorder does not appear to be

particularly significant to Dr. Joseph's opinions.  A "breakthrough seizure" suffered

"every 2-3 months" (*id*. 789) would not appear to impact Plaintiff's ability to perform

regular work activities.  To the extent it was unclear how much Dr. Joseph's mistaken

reference to continued seizure activity impacted her opinions, the ALJ should have

contacted Dr. Joseph on this issue rather than simply discounting her opinions in their

entirety.[5]

More importantly, the ALJ ignored the fact that Dr. Joseph's letter also cited to

other medical impairments which supported her opinion, including peripheral neuropathy

and bipolar disorder.  (Tr. 789.)  She also found that as a result of his impairments,

Plaintiff "suffers from severe daily pain and difficulty concentrating for lengths at a time."

(*Id*.)  These are medical findings that must be considered.

In the ALJ's letter to Dr. Joseph asking for clarification, he asked about "the

objective evidence used to determine each limit" on Plaintiff's functioning and whether

the limits are based on Plaintiff's "subjective assessment of his own capabilities."  (Tr.

829.)  In response, Dr. Joseph acknowledged that her "assessment of Mr. Garver's

limitations are based mainly on his assessment of his own capabilities."  (*Id*. 861).  The

ALJ's decision then found that, "*[c]learly, Dr. Joseph's opinions are based on the*

*claimant's self-assessment and are minimally supported by objective exam findings.*

---

[4]  Dr. Woodcock noted that Mr. Garver had two to three seizures since he was age 17, although the seizures stopped once he went on Dilantin.  (Tr. 854.)

[5]  While the ALJ did ask Dr. Joseph to clarify her opinions, he did not ask about this issue.  (*Id*. 829-30.)

-13-

*Thus, the undersigned accords no weight to Dr. Joseph's statement in Exhibit 12F* (Dr.

Joseph's letter of March 11, 2008, Tr. 789) *or her assessment in Exhibit 3F*" (the

Physical RFC Questionnaire completed in September 2007, *id.* 273-76).  (*Id.* 27.)

(emphasis in original).  I find that the ALJ failed to consider certain factors in connection

with this issue that must be addressed on remand.

The Tenth Circuit holds that an "ALJ [must have] a legal or evidentiary basis for

his finding that [a treating physician's] opinions were based merely on Plaintiff's

subjective complaints of pain."  *Langley*, 373 F.3d at 1121.  Here, while Dr. Joseph

acknowledged in the record that her assessment of Plaintiff's functional limitations were

based mainly on Plaintiff's assessment of his capabilities, she also states that she

followed him with regard to a number of medical conditions which resulted in "chronic

physical and mental disabilities" and which she found render him unemployable in any

occupation.  (Tr. 861.)  She included her GAF score of 35, and continued to note the

"severe daily pain and difficulty concentrating for lengths at a time".  (*Id.*)  Again, as with

the November 2008 letter, these are medical findings which cannot be ignored by the

ALJ in assessing her opinions.  Moreover, the Tenth Circuit has stated that a medical

finding of disability based on "an evaluation of the patient's medical history, the

physician's observations of the patient, and evaluation of the credibility of the patient's

subjective complaints of pain. . . is medical evidence supporting a claim of pain, even if

the objective test results ,taken alone, do not fully substantiate the claim."  *Nieto v.

Hecker,* 750 F.2d 59, 61-62 (10th Cir.1984).

In short, Dr. Joseph is the treating physician who is in the best position to judge the consistency of Plaintiff's complaints based on her treatment and observations. She is the only provider who appeared to consider the combination of Plaintiff's impairments and the pain and difficulty he has with concentrating. The ALJ cannot reject all of her opinions and statements, including her medical findings and opinion on Plaintiff's ability to work, on the basis that she considered Plaintiff's subjective complaints in rendering her functional assessment.

The ALJ's final reason to reject Dr. Joseph's opinions is that her conclusion of disability is an issue reserved to the Commissioner. (Tr. 28.) However, "opinions from any medical source on issues reserved to the Commissioner must never be ignored." *Miller v. Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. July 22, 2002). "The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *Id.* Indeed, the Social Security Administration has stated that while opinions given by medical source on issues reserved to the Commissioner are not entitled to controlling weight or special significance, the adjudicator must still "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record. SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). Further, "the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d)." *Id.* The ALJ erred in not conducting this analysis.

Importantly, the majority of evidence appeared to supported Dr. Joseph's opinions, which the ALJ improperly discounted.  Dr. Woodcock performed a neurological examination of Plaintiff in October 2008.  (Tr. 853-60).  He determined, as did Dr. Joseph, that Plaintiff was totally and permanently disabled as a result of Plaintiff's impairments in combination, including a left lower extremity chronic pain syndrome.  (*Id.* 859.)[6]

Mary Ann Keatly, Ph.d., and Emily Garabed, M.S., performed a cognitive-linguistic evaluation of Plaintiff in March 2008.  (Tr. 780-85.)  They noted that Plaintiff reported a history of seizures and cognitive deficits, such as short term memory problems, since hitting his head on a tile floor and sustaining a traumatic brain injury.  (*Id.* 780).  After examination and testing, Dr. Keatly and Ms. Garabed opined that Plaintiff was not able to work in any occupation because of the limitations caused by cognitive and linguistic areas of weakness.  (*Id.* 784.)[7]

Dr. Wachtel, the consultative psychologist, assessed a GAF score of 55, indicative of moderate symptoms.  He found as to the cognitive disorder that Plaintiff's

---

[6]  The ALJ improperly gave no weight to Dr. Woodcock's thorough neurological examination.  (Tr. 28, 29.)  He relied on Dr. Woodcock's statement that he did not have all of Plaintiff's records.  However, Dr. Woodcock performed his own examination of the Plaintiff and made findings based on this.  His opinion in regard to his examination cannot be simply ignored.  Moreover, the ALJ does not state what records, if provided to Dr. Woodcock, may have resulted in him issuing a different opinion.  The treating physician's opinions support Dr. Woodcock's opinions, and it does not appear that any other provider did a neurological examination of the Plaintiff.

[7]  The ALJ also completely discounted these findings.  This was error as their opinions were based on test results that they conducted as well as linguistic and other cognitive issues not assessed by others, such as visual-spatial thinking, auditory processing in the presence of noise, and cognitive stamina.  (Tr. 783-84.)  As such, these opinions must be properly weighed.  This is particularly true since they are consistent with the treating physician's opinions about concentration and inability to maintain attention.

abilities are within the "average to low-average range" and that Plaintiff's "work-related abilities are mildly impaired by his cognitive problems. (Tr. 503.)  However, he noted that Plaintiff "is at high risk for continued progressive cognitive impairment.  It may well be that he will eventually lose enough cognitive functioning to be considered disabled in this area." (*Id.*)  Importantly, Dr. Wachtel also pointed out the fact that physical impairments, which he did *not* take into consideration, may affect Plaintiff's work-related activities.  In other words, Dr. Wachtel specifically pointed out that the combination of both mental and cognitive impairments must be taken into account in determining Plaintiff's ability to do work-related activities.  This lends support to Dr. Joseph's findings based on the combined impact of impairments.

Even the consultative examination report relied on by the ALJ does not necessarily contradict Dr. Joseph's opinion.  Consultative examiner Laura Moran opined, like Dr. Joseph, that Plaintiff will be limited to sit down work.  Dr. Moran does not discuss or address the other limitations caused by the combination of the pain and the psychological problems.  The fact that these other limitations were not discussed does not mean that the evidence is contradictory.  Again, it is the combination of impairments that appear to be central to Dr. Joseph's findings.  The ALJ erred in not recognizing this and in improperly discounting all the evidence that supported Dr. Joseph's opinions.

Based upon the foregoing, the case must be remanded so that the treating physician's opinions and other medical source evidence can be properly weighed.  On remand, the ALJ must give proper deference to Dr. Joseph's opinions.  He should also

keep in mind that Dr. Joseph gave opinions regarding a number of physical and mental impairments and that it may be necessary to decide whether to adopt or not adopt each one individually.  SSR 96-5p, 1996 WL 374183, at *4.

> 2.   Whether the ALJ Failed to Include All of Plaintiff's Limitations in the Hypothetical Question

Plaintiff asserts that the hypothetical question should have included the fact that he has no binocular depth perception.  I agree.  It is undisputed that Plaintiff is blind in one eye.  As such, the issue of whether Plaintiff has depth perception problems should have been developed in the record.  "It is well established that 'a Social Security disability hearing is a non-adversarial proceeding, in which the ALJ has a basic duty of inquiry', to '"inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."'  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (quotation omitted).  The depth perception issue is particularly important since two of the occupations that the ALJ found Plaintiff could do based on the VE's testimony–electronic worker and semi-conductor assembler–require depth perception.  (Tr. 70, 72.)

I also find that the RFC and hypothetical question regarding the visual impairments found by the ALJ were not accurate.  The ALJ acknowledged in his RFC that Plaintiff is blind in one eye, and found that Plaintiff's binocular and peripheral vision is limited.  (Tr. 23-24.)  This finding was included in the hypothetical question given to the VE.  (*Id.* 69.)  By definition, however, since Plaintiff is blind in one eye he does not have *any* binocular vision, only monocular vision.  The RFC and hypothetical question

based on same were thus not technically accurate. "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.'" *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). Further, the only actual limitation the ALJ found from this vision impairment is that occupations which would cause a danger to the individual or others should be precluded. (*Id.* 69-70.) He did not explain how he came up with this limitation, or whether there would be other impairments if a person has only monocular vision.

Plaintiff also argues that the ALJ erred by failing to include other visual limitations. The ALJ found that while Plaintiff might be blind in the left eye, there was "no medical evidence showing the Claimant has an impairment of visual acuity or loss of visual efficiency." (Tr. 22.) In determining that Plaintiff had 20/20 vision, the ALJ was citing the VA medical exam of January 16, 2008. (*Id.*) While there was one reference in those testing results to 20/20 vision, I agree with Plaintiff that the ALJ did not reconcile that conflict with the evidence in the consultative exam or with the Denver Health Medical Center testing results. Laura Moran, the consultative examiner, found that Plaintiff had 20/40 corrected vision in the right eye. (*Id.* 505). This is supported by Dr. Joseph's visual acuity test on May 29, 2009. (*Id.* 898). The ALJ gave Dr. Moran's assessment significant weight, but then chose to ignore her finding about Plaintiff's visual acuity in his right eye. This is error, as an ALJ may not, without explanation, pick only the parts of an opinion that are favorable to a finding of disability. *Haga v. Astrue*,

482 F.3d 1205, 1208 (10th Cir. 2007).  On remand, the ALJ must reconsider the issue

of visual acuity, especially near visual acuity, as it is relevant to jobs cited by the VE.

Also on the issue of visual limitations, I note that Plaintiff's counsel sent a first-

time visual examination dated July 22, 2009, to the Appeals Council and argues that it

should be part of the administrative record to be addressed on remand.  The visual

examination is attached as Exhibit A-3 to Plaintiff's Motion to Remand.  Since this

evidence was sent to the Appeals Council on the same date that the Council rendered

its decision, it did not have this examination during its initial decision denying review.

After its receipt, the Appeals Council treated the evidence as a request to reopen the

claim for SSI which was time-barred  (Tr. 1.)  The Appeals Council also found that this

evidence was cumulative to earlier evidence and that certain of the restrictions in the

examination were not supported by clinical details.  (*Id.*)

I find that this evidence must be incorporated into the record and addressed on

remand.  The Commissioner acknowledges in its response that the Court can remand

the case for consideration of this evidence if it concludes that the ALJ's decision might

reasonably have been different if the new evidence had been before him when he

rendered a decision.  (Response Brief at 37) (citing *Wall v. Astrue*, 561 F.3d 1048, 1063

(10th Cir. 2009)).  In other words, for this evidence to be considered part of the record it

must be new, material and chronologically relevant, and there must be good cause for

the failure to incorporate it into the record.  *Id.*  I find that this criteria has been met.

First, the evidence is new in that the examination occurred after the ALJ's

decision was made and was thus not available to the ALJ.  I find it is material as it

shows significant additional visual problems, including lack of depth perception and problems with visual acuity, which were not addressed by the ALJ.  I also find that if the ALJ had this evidence before him his decision might reasonably have been different since many of the jobs that the ALJ found Plaintiff could do might be precluded.  Thus, I disagree with the Appeals Council that it is cumulative.  It appears to be chronologically relevant, even though the examination occurred after the period at issue, because the provider specifically stated that these limitations existed as of December 1, 2003.  Further, the record supports a finding that Plaintiff's visual problems arose a long time ago, as referenced in Dr. Joseph's and the consultative examiner's findings.  The new examination provides input as to the severity of those problems which were not addressed by the other evidence.

Finally, I find good cause for the failure to incorporate this evidence into the record.  First of all, but for documents crossing in the mail, it would have been included as part of the record in this case.  Second, Plaintiff asserts that the delay in obtaining this evidence relates to his financial condition and lack of insurance.  Because Plaintiff is under the Colorado Indigent Care Program, he contends that it is very difficult and takes a long time to schedule appointments.  Further, Plaintiff asserts that he was not aware until the hearing that the issues of depth perception, near visual acuity and accommodation were relevant to the vocational findings in this case.

I also agree with Plaintiff that the ALJ failed to adequately consider or include limitations on carrying.   Dr. Joseph's opinion restricted Plaintiff from lifting and carrying any weight.  (Tr. 275.)  This is consistent with the fact that Plaintiff had to use a cane

when standing or walking, as recognized by the ALJ.  (*Id.* 23, 69.)  The RFC found, however, that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.  (*Id.* 23.)  The ALJ did not explain or consider, however, how one could lift or carry objects while using a cane and this was not addressed by the VE.  This error must be addressed on remand since these lifting/ carrying limitations certainly may impact the jobs that Plaintiff can perform.[8]

I further find that the ALJ failed to adequately assess or include in the hypothetical question all of Plaintiff's mental limitations.  The record is undisputed that Plaintiff suffers both from mental problems including bipolar disorder and from pain caused by the neuropathy in his left leg (or possibly a central nervous system problem).  There is also evidence of a cognitive disorder.  (Tr. 46, 502.)  Considering the combined impact of Plaintiff's physical and mental impairments, including the traumatic brain injury, treating physician Dr. Joseph found that "during a typical work day" Plaintiff's "experience of pain and other symptoms [are] severe enough to interfere with attention and concentration needed to perform even simple work tasks . . . [on a] frequent [basis]."  (*Id.* 274.)  She also opined that Plaintiff would be unable to work at anything other than low stress jobs.  (*Id.*)

Other medical sources also opined to mental impairments.  Consultative examiner Laura Moran found based upon mental issues alone that Plaintiff's "pace

_____

[8]  I disagree with the Commissioner that any error from this was harmless.  I further reject its argument that because Plaintiff's attorney did not question the VE about this, the argument is somehow forfeited.  It is the ALJ's responsibility to fully develop the record as to the RFC and its impact on Plaintiff's ability to work.

seems to be mildly impaired." (Tr. 53).  Dr. Winfrey, the medical expert who testified at

the hearing, testified that Plaintiff suffered a "moderate" "inability to respond

appropriately to usual work situations.  (*Id.* 50.)  The ALJ did not explain why he ignored

the above findings when he gave significant weight to the opinions of Drs. Moran and

Winfrey.  Finally, the VA records submitted to the Appeals Council show poor

orientation and memory, behavior and comprehension deficiencies, (*id.* 888), a GAF

score of 60 indicative of moderate symptoms and that "[t]here is reduced reliability and

productivity due to PTSD signs and symptoms."  (*Id.* 893.)[9]

The ALJ acknowledged that Plaintiff had "mild difficulties maintaining

concentration, persistence or pace" based on mental limitations.  (Tr. 22.)  He also

found that Plaintiff could only "occasionally" interact with co-workers, supervisors or the

public.  (*Id.* 23.)  He did not give any weight to Dr. Joseph's opinions based on the

combined impact of Plaintiff's impairments and his pain, nor did he acknowledge the

other mental limitations noted above.  These limitations need to be properly assessed

on remand, taking into account the combined impact of Plaintiff's impairments, including

pain.  In doing so, the ALJ must also address whether Plaintiff can "'focus long enough

to complete tasks in a timely fashion; and to adapt to stressful circumstances without

either withdrawing from the situation or experiencing increased signs and symptoms of

---

[9]   The Appeals Council considered these records from the VA and found that they did not
"establish greater work restrictions than the" ALJ found.  (Tr. 4.)  I disagree, as they support the existence
of mental limitations that were not included in the RFC or hypothetical question and which arguably could
have impacted the case or changed the outcome.  Accordingly, this evidence is now a part of the record
and shall be considered on remand.  *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)
(new, material evidence that was considered by the Appeals Council in connection with the claimant's
request for administrative review becomes part of the record in evaluating the Commissioner's denial of
benefits under the substantial-evidence standard).

the claimant's mental disorder.'" *Washington*, 37 F.3d at 1440 (quotation omitted).

Further, the ALJ must keep in mind that the existence of a moderate impairment is not

the same as no impairment at all. *Haga,* 482 F.3d at 1208 (10th Cir. 2007); *see also*

*Bowers v. Astrue*, No. 07-5114, 2008 WL 794853, at *3 (10th Cir. March 26, 2008).

Moreover, the ALJ erred by not including in the RFC or hypothetical question

even the mild difficulties maintaining concentration, persistence or pace that he found

Plaintiff had.  This was error. *Wiederholt v. Barnhart*, No. 03-3251, 2005 WL 290082, *5

(10th Cir. Feb, 8, 2005) ("[b]ecause the ALJ omitted, without explanation, impairments

that he found to exist . . ., the resulting hypothetical question was flawed").  In assessing

RFC, the adjudicator must consider limitations and restrictions imposed by *all* of an

individual's impairments, event those that are not 'severe'".  SSR 96-8p, 1996 WL

374184, at *5 (July 2, 1996).  This includes "documented limitations of concentration,

persistence or pace.'" *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009).  While the

ALJ claimed that he had incorporated those work related functional limitations in his

functional capacity assessment in the rest of the decision (Tr. 23), this is not accurate.[10]

I also find that the ALJ improperly discounted the GAF score of 35 assigned to

Plaintiff by Dr. Joseph.  The Tenth Circuit has indicated that a GAF score of 50 or less

suggests an inability to keep a job. *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at

---

[10]   The RFC stated, "[m]entally, the claimant can understand, remember, and carry out instructions that could be learned within a period of up to approximately 90 days which would involve only occasional interaction with co-workers, supervisors, and the general public."  (Tr. 23.)  This RFC does not encompass the mental limitations the ALJ found in connection with maintaining concentration, persistence or pace. *See Stewart*, 561 F.3d at 684-85; *Young v. Barnhart*, 362 F.3d 995, 1004 (10th Cir. 2004); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008).  Moreover, the ALJ erred because he  did not state what evidence supported his mental RFC as required by law. *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2,1996); *Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. Dec. 16, 2005).

* 3 (10th Cir. Dec. 8, 2004).  The ALJ said that Dr. Winfrey, a medical expert at the hearing, testified that this GAF score was "not established or supported by the record or [Dr. Joseph's] treatment notes."  (Tr. 31.)  The ALJ found Dr. Winfrey's opinions more persuasive than those from Dr. Joseph and accorded them "significant weight."  (*Id.*)  Thus, he rejected this score.

However, the ALJ's reference to Dr. Winfrey's testimony is somewhat skewed.  When asked to provide an opinion as to whether the record establishes the GAF score assigned by Dr. Joseph, Dr. Winfrey stated, "there's nothing in the record that has anything close to that" and that "it was a bit out of the blue."  (*Id.* at 51.)  However, she also said that "there aren't a lot of references" to GAF scores in the record and questioned whether Dr. Joseph was using a psychological scale to describe Plaintiff's entire medical condition, including the physical and mental impairments.  (*Id.*)  In short, since Dr. Winfrey did not know how Dr. Joseph calculated the GAF score, it does not provide substantial evidence to simply discount those scores.  That was probably an issue that would need to be clarified with Dr. Joseph.

Moreover, consultative examiner Dr. Wachtel assigned a GAF score of 55 (Tr. 503) and the VA assessed a GAF score of 60.  While these scores are higher than Dr. Joseph's score, they still indicate the existence of moderate impairments.  *See Petree v. Astrue*, No. 07-5087, 2007 WL 4554293, at *7 (10th Cir. Dec. 28, 2007).  As discussed previously, the existence of a moderate impairment is not the same as no impairment at all and must be adequately considered in the RFC assessment.  *Haga,* 482 F.3d at 1208.

I also note that Dr. Winfrey did not examine Plaintiff and testified merely from a review of the medical records.  The ALJ did not appear to consider the fact that the opinion of a non-examining medical provider such as Dr. Winfrey is generally "entitled to the least weight of all."  *Robinson*, 366 F.3d at 1084.  Moreover, the opinions of a non-examining medical consultant "must themselves find adequate support in the medical evidence" in order for an ALJ to be able to rely on them.  *Lee*, 2004 WL 2810224, at * 3.

Finally, the ALJ must also properly assess the evidence of pain.  While the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," he then stated that Plaintiff's "symptoms   . . . are not credible to the extent they are inconsistent" with the RFC.  (Tr. 24.)  In so finding, the ALJ gave short shrift to the evidence of pain and did not properly analyze the relevant factors under *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987).

For example, the ALJ ignored the fact that the medical records uniformly document Plaintiff's pain, no provider appeared to discount the pain, there is evidence that Plaintiff's psychological disorders combine with his physical problems, Plaintiff was prescribed medications to assist with the pain which allegedly had side effects, and Plaintiff regularly used a cane.  The issue of Plaintiff's pain as impacting his ability to work must be properly analyzed on remand.  *See Carpenter*, 537 F.3d at 1268 ("[t]he ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how [plaintiff's] repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard

by pain or the side effects from her pain medication"); *Romero v. Astrue*, 242 Fed.

Appx. 536 (10th Cir. 2007) ("Dr. Haddock's conclusions concerning Ms. Romero's pain

and limitation. . . find support in the treatment records and therefore could not be

cursorily dismissed for the reason the ALJ gave: lack of medical evidence.").

Based on the foregoing, I find that the case must be remanded so that the ALJ

can consider and include in the RFC and hypothetical question all of Plaintiff's

impairments and limitations, even those that are not severe.

### 3.   Whether the ALJ Erred at Step Five

Given the fact that I am remanding the case to the Commissioner to properly

weigh the medical evidence and to reassess the RFC based on the combined impact of

all of Plaintiff's impairments, the step five analysis will obviously need to reassessed on

remand as well.  I agree with Plaintiff, however, that the step five analysis performed by

the ALJ is not supported by substantial evidence.

First, given Plaintiff's blindness in one eye and the evidence regarding lack of

depth perception which is now part of the record, the ALJ's finding that Plaintiff could

perform the occupations of electronics worker and semi-conductor assembler does not

appear to be supported by substantial evidence.  The job requirements for both

electronics worker (Tr. 215) and semi-conductor assembler (*id.* at 221) include

occasional depth perception.  An ALJ must inquire about and resolve any conflicts

between a VE's testimony regarding available jobs and the descriptions of those jobs in

the DOT.  *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009); SSR 004-p, 2000 WL

1898704, at *4 (1989).  When there is a conflict between the VE's testimony and the

DOT, the ALJ must elicit a reasonable explanation for the conflict. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). There is no explanation by the VE as to why the DOT definition of depth perception and information in the DOT of the requirements of these jobs should not be found to be controlling.

Further, the job of electronics worker (Tr. 215), final assembler (*id.* 217), and semi-conductor assembler (*id.* 221), all require frequent near visual acuity. The job of printed circuit board touch-up screen assembly requires constant near visual acuity. (*Id.* 213.) Given the evidence from the visual examination which is now part of the record as well as the prior evidence that Plaintiff's right eye was 20/40 with correction, Plaintiff may not be able to perform these jobs. This must also be addressed on remand. *See* SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996) ("Most sedentary unskilled occupations require working with small objects. If a visual limitation prevents an individual from seeing the small objects involved in most sedentary unskilled work. . . there will be a significant erosion of the sedentary occupational base.").[11]

Plaintiff also asserts that the consideration of jobs requiring work at a production pace was inconsistent with the DOT and evidence. The job of electronics worker is listed in the DOT as a light occupation. Given the limitations on standing based upon the DOT's definitions, Plaintiff would be unable to perform most light work jobs or occupations. SSR 83-10, 1983 WL 31251, at *5 (1983) ("[r]elatively few unskilled light

---

[11]   Additionally, Plaintiff may have problems with visual accommodation. The issue of accommodation was raised in the letter from Dr. Joseph of May 21, 2009, presented to and considered by the Appeals Council and which is now part of the record. This may provide additional limitations as the ability of Plaintiff to perform the jobs the VE listed and should be considered on remand.

jobs are performed in a seated position"). However, the VE testified that this job was classified in the light work capacity because of the requirement to work at a production pace, not because of standing requirements. (Tr. 70.)

As to such light jobs, the DOT states that working at a production rate pace entails "the constant pushing and/or pulling of materials even though the weight of these materials is negligible." (Tr. 209.) It further states that "[t]he constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible". (*Id.*) If one is constantly moving materials Plaintiff asserts that this will require "constant" handling to be classified as light because of a production pace. (*Id.* 208.) The electronics worker job cited by the VE, however, requires only "frequent" use of the hands. (*Id.* 215.) This does not appear to satisfy the description of light jobs that require working at a production pace, a regulatory definition that cannot be contradicted. If this job was not classified as "light" because of a production pace, then it must have been light either because of standing requirements or because of lifting and carrying requirements, which may be beyond Plaintiff's RFC. Since there was a conflict between the VE's testimony and the DOT which was not adequately explained, this must also be addressed on remand.

Plaintiff also asserts that the VE and ALJ improperly cited a semi-skilled job when there was no evidence he possessed skills transferable to that occupation. I agree. The occupation of assembler, semi-conductor is a semi-skilled occupation. (Tr. 219.) In order for a person to do a job that is semi-skilled, there must be identifiable

skills that can be transferred in order for that person to be able to do that occupation. *See* SSR 83-10, 1983 WL 31251 at *3 ("[a]bility to perform skilled or semiskilled work depends on the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level or the presence of recently completed education which allows for direct entry into skilled or semiskilled work").

Plaintiff's prior work involved only two occupations that were semi-skilled–tire repairer and a telemarketer position, both with an SVP of 3. (Tr. 68.) There is nothing in the DOT description of either job to suggest any skills transferable to the job of semiconductor assembler. (*Id.* 211-221.) Further, neither the VE nor the ALJ cited any specific skills that Plaintiff had acquired that would allow him to do the semi-skilled job and the ALJ did not make the appropriate findings regarding transferability of skills. This was error. The law is clear that "[w]hen an ALJ makes a finding that a claimant has transferable skills, he must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable. *Dikeman v Halter,* 245 F.3d 1182, 1185 (10th Cir. 2001). This also requires a remand. On remand the ALJ must "make specific findings as to the particular skills plaintiff may have acquired and the specific jobs to which those skills are transferable" and "must base those findings on substantial evidence in the record." *Id.* at 1188.

The surveillance systems monitor job may also not be available because of the requirement of working with the public. The RFC limited Mr. Garver to occasional contact with the public and coworkers. The job of surveillance systems monitor, however, requires the ability to talk frequently and to deal with people. (Tr. 207.) The

definition of that job indicates that the person "telephones police or other designated agencies to notify authorities of location of disruptive activities" and that they monitor premises of public transportation terminals to detect "crimes or disturbances, using closed circuit television monitors and notifies authorities by telephone of needed corrective action." (*Id.*)  The job has a reasoning level of 3 (*id.* 75), and may require more concentration and attention than Plaintiff is capable of.  This must also be addressed on remand.

Based on the foregoing, it appears that most of the jobs cited may not be available given Mr. Garver's RFC.  The ALJ's failure to address the above issues about Plaintiff's ability to perform the jobs means that his decision was not based upon substantial evidence.

If the jobs of electronics worker, final assembler, semi-conductor assembler and/or surveillance systems monitor job are eliminated due to Plaintiff's RFC, I agree with Plaintiff that there is not substantial evidence to support a finding that Plaintiff could perform a significant number of other occupations.  The remaining occupations, if any, have a very limited number of jobs.  For example, the job of touch up screener, printed circuit board assembly, which may be the only job that Plaintiff can do given his RFC, has only 325 jobs in Colorado and 23,000 nationally.  (Tr. 70.)  This number is "'small enough to put the issue in a gray area requiring the ALJ to address it.'" *Duran v. Astrue*, 654 F. Supp. 2d 1298, 1305 (D. Colo. 2009) (quotation omitted).  The ALJ did not address whether this number is significant.  On remand, the ALJ must evaluate whether, given Plaintiff's circumstances, the number of jobs that Plaintiff can do is

significant under the appropriate factors.  *Trimiar v. Sullivan*, 956 F.2d 1326 (10th Cir.

1992); *see also Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004).  The ALJ

should also consider whether Mr. Garver can hold whatever job he finds for a significant

period of time.  *Winfrey v. Astrue*, 92 F.3d 1017, 1025-26 (10th Cir. 1996).

Finally, the ALJ must assess on remand the extent of erosion of Plaintiff's

occupational base given the many significant exertional and non-exertional limitations

that exist.  In that regard, the ALJ must assess whether, under the medical-vocational

grids, the sedentary and/or light base is so eroded that Plaintiff must be found disabled.

As stated by the Social Security Administration:

> Where an individual's exertional RFC does not coincide with the definition of
> any one of the ranges of work as defined in sections 404.1567 and 416.967
> of the regulations, the occupational base is affected and may or may not
> represent a significant number of jobs in terms of the rules directing a
> conclusion as to disability. The adjudicator will consider the extent of any
> erosion of the occupational base and access its significance. In some
> instances, the restriction will be so slight that it would clearly have little effect
> on the occupational base. In cases of considerably greater restriction(s), the
> occupational base will obviously be affected. In still other instances, the
> restrictions of the occupational base will be less obvious.
>
> Where the extent of erosion of the occupational base is not clear, the
> adjudicator will need to consult a vocational resource.

SSR 83-12, 1983 WL 31253, at *2 (1983).

SSR 83-12 also states, "[w]here an individual's impairment has not met or

equal[ed] the criteria of the Listing of Impairments at an earlier step in the sequence of

adjudication, but the full range of sedentary work is significantly compromised, section

201.00(h) of Appendix 2 provides that a finding of "Disabled" is not precluded for even

younger individuals."  *Id.* at 3.  Thus, if the range of work is significantly compromised,

Plaintiff may be disabled under the guidelines and the ALJ would not even need to assess whether there are a significant number of jobs that he can perform.[12]

In conclusion on this issue, the case is reversed and remanded for a new hearing and new findings at step five.  The ALJ must properly determine the vocational information and confirm if it is consistent with the DOT and is adequately supported in fact.  If the information is inconsistent with the DOT, adequate explanation for this inconsistency must be addressed.  Further, the ALJ must determine whether there has been a substantial erosion of the job base and, if so, whether Plaintiff should be found disabled based on the medical-vocational guidelines.  If he is not found disabled under the guidelines, the ALJ must identify specific jobs and their numbers and determine if such numbers are significant in the local region where Plaintiff lives or in the several regions of the nation.

> 4.    Whether Plaintiff is Disabled Prior to March 1, 2007 Based on His Impairment of Polysubstance Dependence

Finally, I address the Commissioner's argument that although the ALJ found that Plaintiff had disabling limitations prior to March 2007, 22 months after Plaintiff's insured status expired, the ALJ also found that drug use or alcohol abuse was a material factor in the disability determination.  The Commissioner asserts that because Plaintiff's

---

[12]   One example of how the work base for Plaintiff may be substantially eroded is the ALJ's finding that Plaintiff can only "occasionally" interact with co-workers, supervisors or the public.  (Tr. 23.)  "Occasionally" is defined for most purposes as one-third of a work day.  (*Id.* 75.)  Under that definition, for two-thirds of a work day Plaintiff would be unable to respond appropriately to co-workers, supervisors or the public.  SSR 85-15 discusses limitations on an individual that are non-exertional.  *Id.*, 1985 WL 56857 (1985).  It provides an example of a younger individual who has no exertional limitations with an otherwise very favorable RFC but has a mental impairment which causes a "substantial loss of ability to respond appropriately to supervision, co-workers, and usual work situations."  *Id.* at *4.  The ruling indicates a finding of disabled would be appropriate in that situation.  *Id.*  The ALJ did not consider this issue.

polysubstance abuse was found to be material to his disability past his date last insured, Plaintiff is not entitled to Title II benefits. Interestingly, this argument attempting to preclude Plaintiff from disability benefits prior to March 2007 was made only in a footnote. I find that the Commissioner's argument must be rejected.

It is true that the Social Security Act, as amended in 1996, precludes an award of disability benefits for disabilities resulting from drug addiction or alcoholism. Pub. L. No. 104-121; 42 U.S.C. § 423(d)(2)(C) (Title II); 42 U.S.C. § 1382c(a)(3)(I) (Title XVI). A claimant will not be found disabled if alcoholism is a "contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a) (2000). However, I find that the ALJ did not conduct a proper analysis of this issue.

The ALJ must first determine whether the claimant was disabled prior to finding that alcoholism [or substance abuse] was a contributing factor material thereto. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001). "He must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol" or drugs. *Id.* This is a key factor that must be addressed. *Id.* On that issue, the ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol [or drugs], and then determine whether any or all of plaintiff's remaining limitations would be disabling." *Id.* If the plaintiff would still be found disabled if he stopped alcohol or drugs, then the substance or alcohol abuse "is not a contributing factor material to the finding of disability." *Id.* at 1214-1215. "If, however, the claimant's remaining impairments would not be disabling without the

alcohol [or drug] abuse, then the alcohol[/drug] abuse is a contributing factor material to the finding of disability." *Id.* at 1215.

In this case, as in *Drapeau*, the ALJ failed to follow the applicable legal standards and his conclusion was not supported by substantial evidence. *Drapeau*, 255 F.3d at 1215. Specifically, while Dr. Winfrey testified and the ALJ found that prior to March 2007, Plaintiff would have been disabled based on polysubstance abuse (Tr. 30, 50), the ALJ never addressed the key inquiry–which of plaintiff's current physical and mental limitations would remain if Plaintiff stopped using alcohol, and whether any or all of Plaintiff's remaining limitations would be disabling. Given the impairments that exist, it is doubtful that the polysubstance abuse would be deemed a contributing factor. This is an issue that would need to be determined by the medical providers who saw or examined Plaintiff (*Drapeau*, 255 F.3d at 1215), and I did not see such evidence in the record.[13] On remand, the ALJ must comply with applicable law in determining whether drug or alcohol abuse was a contributing factor material to disability prior to March 1, 2007, and the analysis must be supported by substantial evidence.

IV.   CONCLUSION

Based upon the errors described above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g)

It is

---

[13]   Since Dr. Winfrey's opinion as a non-examining doctor must be supported by evidence in the record, her testimony on the issue of materiality, without evidence from examining or treating physicians, would not be substantial evidence on this issue.

FURTHER ORDERED that based on this remand, Plaintiff's Motion to Remand for Consideration of New and Material Evidence Pursuant to 42 U.S.C. §405(g) filed January 28, 2010 (ECF No. 15) is **DENIED AS MOOT**.

Dated March 28, 2011

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge